## Deas *vs.* Harvie.

It is a general rule that the complainant, in a bill of discovery, must pay the costs of the defendant.

The exception to this rule is, where the complainant shows that he has applied to the defendant to admit some fact, material to the defence of the complainant in the suit at law, which the defendant in the bill of discovery refuses to admit; but which he afterwards admits by his answer to the bill.

Where no application for a discovery is made to the defendant himself, previous to filing a bill of discovery against him, and the only application made is to his attorney, who has no information on the subject except what he has communicated to the complainant's attorney, it is not sufficient to excuse the complainant in the bill of discovery from the payment of costs.

Where a defendant in a suit at law applies to the attorney of the plaintiff, for a discovery, he should at least state to the attorney the material fact which he wishes his client to admit, to save the necessity of a bill of discovery. And if the attorney does not possess the information necessary to enable him to make the admission, the defendant should request him to communicate with his client and obtain such admission from him; and should then wait a reasonable time to enable the attorney to obtain such admission from his client.

The defendant, in an action at law, cannot file a bill in chancery to obtain from his adversary a discovery of the nature and grounds of the claim to recover against him in that action, to enable him to judge whether he has any defence. But the complainant must state, in his bill, the facts which exist, and which he supposes will constitute a good defence to such action; so that the court may see that if the facts, of which a discovery is sought, are admitted by the answer, they will assist in establishing the defence stated in the bill.

The defendant in a suit at law brought against him as acceptor of a bill of exchange, by the payee of such bill, is not entitled to a discovery, from the plaintiff, as to the genuineness of the acceptance, upon a bill which charges, upon information and belief, that such acceptance is a forgery.

The endorser of a draft, who has paid or secured the amount thereof to the endorsee, and has taken a transfer of the draft, has a right to sue the acceptor, and to recover, for his own use, the same amount which the endorsee could have recovered in a suit upon the acceptance.

It is immaterial, in such a case, whether the endorser, on procuring the transfer of the draft and acceptance, has paid the endorsee the amount thereof, or has given him security for such payment.

So if the endorsee has relinquished his claim upon such acceptance, to the endorser, for a mere nominal consideration, that circumstance will not vary the amount of the recovery in an action brought by the endorser against the acceptor.

THIS was an appeal by the complainant, from an order of he vice chancellor of the first circuit, dissolving the injunction

Deas *v.* Harvie.

which had been granted in this cause, upon a bill of discovery; and directing the appellant to pay the respondent's costs. The bill was filed for a discovery in aid of the complainant's defence to a suit at law, upon an acceptance purporting to have been made by him, but which he charged to be a forgery. The facts, as admitted in the answer of the defendant, were substantially as follows: In September, 1839, J. B. Chapman, then of Richmond in Virginia, but who is now dead, had in his possession a draft drawn by himself, upon the complainant Deas, for $1100, payable to the order of the defendant Harvie, sixty days after date, and purporting to have been accepted by Deas; which draft he presented to Harvie, and requested him to put his name upon it as an endorser, for the accommodation of the drawer. This draft was discounted at the Bank of Virginia for the benefit of Chapman; and not being paid when it became due, it was protested for non-payment. The bank afterwards sued the drawer and the endorser of the draft, and recovered separate judgments against them in Virginia, and a part of the debt was collected from Chapman the drawer. Harvie, the endorser, afterwards settled with the bank for the residue of the debt, by giving a mortgage therefor upon his real estate; and the bank thereupon transferred to him, as the endorser of the draft, all their claim against Deas, as the acceptor thereof. A short time previous to this settlement with the bank, a suit was instituted against Deas, upon the acceptance, in the name of Harvie, in the superior court in the city of New-York. And after such settlement, Deas called upon the attorney of Harvie in that suit, for information as to the consideration paid by his client; and was shown by him a letter from the attorney in Richmond who sent him the draft to be collected for Harvie, to which letter was attached a certificate of the court in Virginia showing the recovery of the two judgments. The attorney of Harvey was also applied to for a statement of the facts and circumstances connected with the draft; but he refused to give any information on the subject until he should be informed of the object of the inquiries made. The attorney of Deas then wrote to Harvie's attorney, stating that Chapman was indebted

to his client, who never had had any transactions with Harvie, and had no recollection of having accepted the draft; and therefore claimed a right to know who was the real plaintiff in the suit, and in what right he claimed to recover. The attorney replied that his client Harvie was the real plaintiff, and the suit was prosecuted for his benefit, he having taken up the draft because he was forced to pay it; stating that his information was from the gentleman who sent him the demand for collection, but that he did not wish to be bound by that statement, as the persons whom he represented resided in Virginia, and he could not apply to them for information on that subject.

The complainant thereupon filed the bill in this cause, stating, among other things, that he never received any value for this acceptance, nor did he give it for the accommodation of any one, and that he never had any connection with it; and charging, upon his belief, that the acceptance was a forgery. The defendant, Harvie having put in a full answer to the bill, the vice chancellor made the usual order for the dissolution of the injunction, and for the payment of the defendant's costs.

The following opinion was delivered by the vice chancellor.

SANDFORD, V. C. The complainant accedes to the general rule, that a defendant in a bill of discovery, who has answered fully, is entitled to his costs. He relies for exemption from the rule, on his having first applied to the defendant for the desired information before filing his bill; and that the defendant refused the discovery which he has since made in his answer. The only applications, which by the admissions in the answer are proved to have been made, were first for information as to the consideration paid by the defendant for the acceptance in question; and *secondly*, an inquiry whether the defendant was the real plaintiff in the suit at law, or who was such plaintiff, and how and in what right he claimed against the complainant. It appears that Mr. Harvie's attorney replied to the latter inquiry, stating that Mr. Harvie was the real plaintiff at law, prosecuting for his own benefit, having taken up the acceptance

Deas v. Harvie.

and been forced to pay it. The declaration at law disclosed to Lieut. Deas that Mr. Harvie stood as first endorser upon the bill : and the certificate from the clerk of the superior court at Richmond, exhibited to the attorney for Lieut. Deas, apprised him that judgment had been obtained against Mr. Harvie and the drawer respectively, on the acceptance, by the Bank of Virginia. Taken together the information communicated was, that Mr. Harvie, as first endorser, had been sued to judgment by the holders of the bill; that he had thereupon settled with and paid such holders, and received the bill itself from the files of the court in Virginia; and that he had as the first endorser of the bill, and for his own benefit, commenced the suit on it here against the acceptor.

It appears to me that all the inquiries, made before filing the bill, were answered by Mr. Harvie's attorney. The answer of Mr. Harvie to the bill of discovery, discloses nothing which is claimed to be inconsistent with what was before communicated, except that it appears he settled with the bank for considerably less than the face of the bill; and, although his arrangement was agreed upon, and the bill delivered to him before he brought his suit at law, yet he did not pay the holders. He merely secured them by a conveyance of lands in trust, in the nature of a mortgage, and such conveyance, through his misapprehension, was not executed till after the bill of discovery was filed.

On the question of costs, it is wholly immaterial what discoveries the complainant has made by his bill, provided they are of matters respecting which no inquiry was made of the adverse party before proceeding in equity.

The sole point in this case, therefore, is whether the inconsistency just stated is material to Lieut. Deas's defence at law. As to the sum paid or agreed to be paid by Mr. Harvie, there is really no inconsistency. The form of declaring at law, does not require the plaintiff to state the precise amount which he claims, nor is it often stated in practice. And the inquiries put by the attorney for Lieut. Deas, did not call for any thing on this subject specifically.

*Deas v. Harvie.*

Then as to the mode in which Mr. Harvie adjusted the judgment of the bank. I think it was sufficient to give him a right to enforce the bill. The bank agreed to receive a different security, and delivered the bill to him, thereby relinquishing to him their claim against the acceptor.

There is much doubt in my mind, whether the inquiries put to Mr. Harvie's attorney, were sufficiently pointed and definite to warrant the claim made here for exemption from the costs of the discovery. It is probable that Lieut. Deas's ignorance of the grounds of the claim, caused the indefinite mode of inquiry, which was adopted; but that is not a ground for refusing costs to the defendant.

If, as was suggested, this were in truth a fishing bill, the complainant must pay the customary penalty for what he has extracted in the way of discovery. Bills of that character are not favored in this court. Without reference to that consideration, I am compelled to say that in my judgment there is not sufficient in the case to relieve the complainant from costs.

Order that injunction be dissolved, and that the complainant pay the costs of the suit.

*T. Sedgwick*, for the appellant. I. The request for discovery was sufficient. No other could be made. II. The *answer* to this request was *insufficient*; and the refusal to give further information well warranted the filing of this bill. The answer is evasive and untrue. III. The discovery obtained is such, when coupled with the incorrect character of the information given, as to relieve the complainant from costs. 1st. It now appears that only *half the draft* is due. 2d. Harvie was discharged by the irregular presentment. He took it up in his own wrong, and can acquire no rights by so doing. 3d. He has not *paid* the draft at all. He has only secured it by a mortgage, and cannot sue as for money paid. He does not sue as trustee for the bank. 4th. When the suit at law was brought, the plaintiff's cause of action had not accrued. The suit was brought on the 25th of March, 1845. The agreement with the bank was made on the 22d of April, 1845, and the trust deed

Deas. *v.* Harvie.

was executed on the 2d of July, 1845, and the defendant avers that the suit was brought *for his own benefit* and not for the benefit of the Bank of Virginia. It follows that when the suit at law was brought, the plaintiff had no right to sue. IV. The complainant having obtained a discovery material to his defence at law, and which was unreasonably refused before bill filed, should not be charged with the costs of the suit.

*O. L. Barbour*, for the respondent. I. The principle upon which costs are given or refused in these cases is laid down in *King* v. *Clark*, (3 *Paige*, 76,) and in 4 *John.* 504. It is this. If the complainant wishes to avoid paying costs, he must ask for a discovery of the facts he wishes an admission of; and if it is refused and he obtains the information by the bill, costs are refused to the defendant. This is the only rule applicable to such cases. The court does not look into the merits, and see if the answer admits a good defence, or an available one. In this case there was no proper application by the complainant for a discovery, and no refusal. The inquiries contained in the note of the defendant's attorney, so far as they were specific, were answered fully by Smith's note, *so far as he knew* the facts inquired about; and he knew no more than was contained in the note, and in the record which he showed the defendant's attorney.

II. The application made by the defendant's attorney to Smith, the plaintiff's attorney, for a "full discovery," was too indefinite. The application should have required him to admit some distinct fact or facts, and should not have been a mere *pumping* question. It would be impossible to answer such a question so as to satisfy the rule. And the party had no more right, while making that application, to fish for something which might possibly benefit him, without specifying, particularly, what he wanted, than he would have to file a fishing bill of discovery. The party was not bound to make any answer to vague and loose surmises. (*See Story's Eq. Jurisp. p.* 263, *as to fishing bills. See also Newkirk* v. *Willett*, 2 *Caines' Cas. in Er*, 296. *Frietas* v. *Dos Santos*, 1 *Young & Jer*. 577.)

III. Harvie, in his answer, answers for himself that he has
fully given every information asked of him.   IV. The Bank of
Virginia who had discounted the draft could sue all the parties
on it.   No protest was necessary as to the complainant, who
was acceptor; and the bank having a good right of action
against the acceptor, might transfer it to any person; who might
sue in his own name, and without paying any consideration
whatever.   It was contended by the counsel for the appellant,
before the vice chancellor, that the pretended settlement between
the defendant and the bank, made by his giving his note and
trust deed, was no payment, so as to enable him to sue; and
4 *Pick.* 444, 18 *Mass. Rep.* 40, and 2 *John. Cas.* 75, were
cited in support of this position.   But these cases show clearly
that if a party gives his negotiable note for a debt which is dis-
charged, then it is payment, so as to enable an endorser to sue
for money paid.   Besides, here was an execution levied.   The
presumption will be in favor of its being a negotiable note.   It
is evident from the whole language of the answer, that the ob-
ligation of Harvie was received by the bank in discharge of
his debt; or why should the bank have delivered up to him the
acceptance?   V. If the discovery obtained from Smith, the at-
torney, was insufficient, it was the party's own fault, in not
applying to the right person.   It is not to be presumed that a
party residing in another state, on sending a note for collection,
should communicate, at first, every particular relating to its
concoction, how he came into possession of it, &c.

VI. The demand for discovery was not in the proper form,
nor made of the proper person.   It was made of the attorney,
instead of the party himself.   The *attorney* was requested " to
make a full disclosure."   And thereupon a correspondence took
place; in which Mr. Sedgwick says, " I hope you will consider
*yourself* at liberty to let me know the grounds of your suit."
And the complainant, in his bill, says the information derived
from the correspondence " is the only information which he has
been able to obtain in this matter from the *attorney* of said
plaintiff."   The bill nowhere alleges that the complainant has
not been able to obtain any information from the *plaintiff;* or

Deas *v.* Harvie.

that any application had been made to him. The attorney was not the proper person to apply to for a discovery. 1. Because he was not the person most likely to possess the information; and 2d. Because the attorney is not *bound,* and would not be *allowed,* to disclose matters communicated to him by his client. (*Hare on Dis.* 163, 173. *Greenough* v. *Gaskell,* 1 *My. & Keen,* 100. *Wigram on Dis.* 62, *and cases there cited. Id.* 196.) In *Bolton* v. *Corp. of Liverpool,* (1 *My. & Keen,* 88,) it was held that the complainant was not entitled to a discovery of cases and title deeds laid before counsel. It is a general rule that a discovery will not be compelled where it would subject the defendant to a penalty, &c., or would be in violation of professional confidence. (*Welf. Eq. Pl.* 119, 123 to 127. *March* v. *Davison,* 9 *Paige,* 580.) Mr. Hare says, " It would seem that an attorney, who is not a party to the suit, cannot be compelled, on motion, to produce papers belonging to his client, who is a party ; even if the client himself could be compelled to produce them." (*Hare on Dis.* 173, *and cases there cited.*) The defendant was bound, on the receipt of Mr. Smith's letter giving all the information which *he* possessed, either to ask Smith to communicate with Harvie, and get a discovery, or to write to Harvie, himself, asking for the information he wanted. But he did neither. He contented himself with applying to the attorney for such information as he might happen to possess, on the subject ; and because the information obtained from *him* did not suit him, he files a bill of discovery; without making application to Harvie, or even asking Smith to apply to him.

VII. There was no refusal of the discovery. Smith, immediately after being applied to by Mr. Sedgwick, gave him a full disclosure of all the facts within his knowledge. And as there was no *application* made to Harvie, of course there could not have been any refusal by *him.* VIII. As respects costs, the general rule is that the complainant in a bill of discovery, upon obtaining it, pays the defendant his costs. (*Burnett* v. *Saunders,* 4 *John. Ch. Rep.* 504. 1 *Hill's Ch. Rep.* (*So. Car.*) 34. *Coop Pl.* 61.) And costs are given against the complainant,

Deas v. Harvie.

of course, if the charges in the bill are denied. (*King* v. *Clark*, 3 *Paige*, 76.) But if the complainant, before filing his bill, asks a discovery from the defendant, who refuses it, whereby the complainant is compelled to come into equity, the defendant will not be allowed costs. (*Id. ib. McElwee* v. *Sutton*, 1 *Hill's Ch. Rep.* 34. 4 *John. Ch. Rep.* 504. 1 *Ves. Jun.* 423.) Here no proper application for a discovery was made, and no refusal given; and the complainant having obtained from the answer of the defendant, all the information it was in his power to furnish, the defendant is entitled to his costs.

The Chancellor. The complainant's bill having been fully answered, it was a matter of course to dissolve the injunction, which restrained the further prosecution of the suit at law until the discovery should have been obtained. And I do not see any thing in this case to take it out of the general rule that the complainant in a bill of discovery must pay the costs of the defendant. The exception to this general rule is where the complainant shows that he has applied to the defendant to admit some fact, which is material to the defence of the complainant in the suit at law, which the defendant in the bill of discovery refuses to admit; but which he afterwards admits in his answer to the bill.

In this case no application for a discovery was made to the defendant. And the application to the attorney, who had no information from his client on the subject, beyond what was communicated to the complainant's attorney, was not sufficient to excuse the complainant from the payment of costs. He should at least have stated to the attorney the material fact which he wished his client to admit, to save the necessity of a bill of discovery, and should have requested him to communicate with his client and obtain such admission. And he should then have waited a reasonable time to enable the attorney to obtain such admission from his client. In this case, however, the defendant himself was not bound to furnish the complainant with information to enable him to judge whether he had any defence to the suit; and to obtain such information appears

in fact to have been the whole object of the bill. For, although this bill contains a charge, upon the belief of the complainant, that the acceptance upon which the suit at law was founded was a forgery, it could not have been expected that the defendant in this cause could be compelled to admit that he was aware of that fact; which would subject him to a prosecution for a felony for uttering and publishing the forged acceptance as true, with intent to defraud the complainant. The defendant in the action at law cannot file a bill in chancery to obtain from his adversary a discovery of the nature and grounds of the claim to recover against him in that suit. But the complainant must state in his bill the facts which exist, and which he supposes will constitute a good defence to such action, so that the court in which the bill of discovery is filed may see that if the facts of which a discovery is sought are admitted by the answer of the defendant, they will assist in the establishing of the defence stated in the bill.

In this case, the answer of the defendant does not admit any fact charged in the bill, proving, or tending to prove, that the acceptance was a forgery, or that it was obtained from the complainant without consideration, or that this defendant gave no consideration for it. And the bill states in express terms that it was not an accommodation acceptance. The complainant, therefore, has not obtained from the defendant any discovery which can aid him in establishing the only defences to the action at law which are stated in the bill. For it is wholly immaterial whether Harvie paid the bank for the transfer of the draft and acceptance, or gave them security for such payment. The defendant having been made liable to the bank, on account of his endorsement, for the whole of the draft except what had been recovered of Chapman, exclusive of the costs of both suits, which Chapman was bound to indemnify him against as an accommodation acceptor, he had a right to settle with the bank upon such terms as they might think proper to require. And by the transfer of the interest of the bank in the draft and acceptance to him, he obtained a right to recover, for his own use, from the acceptor, the same amount which the bank itself

could have recovered, in the name of Harvie or otherwise, in a suit instituted for the benefit of the bank against Deas upon his acceptance. The suit in the superior court was probably instituted in the name of Harvie, the payee of the draft, for the benefit of, and with the assent of, the bank, as well as to protect Harvie from his liability upon the judgment against him as endorser. At least, there is no allegation in the bill that the suit was brought in his name without the authority of the bank. And at the time the attorney was applied to for information on the subject, that suit was in fact prosecuted for the benefit of Harvie; he having then settled with the bank, so as to authorize him to continue the suit for his own benefit exclusively. It is then wholly immaterial whether he paid more or less to the bank upon the settlement which he made with it, in April, 1845. And even if the bank had relinquished its claim upon this acceptance, to Harvie, upon a mere nominal consideration, it would not have varied the amount of the recovery, in the action against the acceptor.

The order appealed from is not erroneous, and it must be affirmed with costs.